# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GEORGE BILLY ROOP, JR,**

    **Plaintiff,**

**v.**                                                       Case No: 6:12-cv-1387-Orl-31TBS

**WRECKER & STORAGE OF BREVARD INC, and ANTONIO C. BARREIROS,**

    **Defendants.**

## ORDER

This matter is before the Court, without oral argument, on Defendants Wrecker & Storage of Brevard, Inc. ("Wrecker"), and Antonio C. Barreiros' ("Barreiros") Motion for Summary Judgment ("Motion") (Doc. 16), Plaintiff George Billy Roop, Jr.'s ("Roop") Response to the Motion ("Response") (Doc. 18), and the Defendants' Reply to the Response ("Reply") (Doc. 20).

### I. Background

Wrecker, a towing and tractor trailer company, employed Roop as a dispatcher from 2008 to 2012. When Roop started working for Wrecker, he was working approximately 40 hours per week and received the compensation he expected—he believed this compensation was based on hourly wages rather than salary. At some point in 2009, Defendants began to require Roop to work more than 40 hours per week but did not give him any additional compensation. Defendants contend that Roop was a salaried employee throughout his time at Wrecker. This lawsuit is essentially about whether Roop is entitled to additional compensation from Wrecker for time he put in, but for which he claims was either under-compensated or uncompensated.

Roop's Amended Complaint asserts five causes of action based on his employment with Wrecker. First, Count I asserts Roop did not receive overtime pay to which he was entitled for the times he worked more than 40 hours per week. Next, in Counts II and III, Roop advances federal and Florida minimum wage claims on the theory that some of the hours he worked for Wrecker were entirely uncompensated, thus, for those specific hours, Roop was not paid a minimum wage. In Count IV Roop asserts that during some weeks in 2012 Roop worked more than 40 hours but was only compensated for 35.5 hours, which he claims is a breach of an oral contract for hourly pay by Wrecker. Finally, Count V is an alternative claim to the breach of contract count, in which Roop asserts Wrecker was unjustly enriched by some of the allegedly unpaid work.

**II.     Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56. Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory

statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

### III. Analysis

The Motion asserts that all of Roop's counts must fail. First, Defendants assert that Count I cannot stand because Roop was exempt from overtime pay under the Motor Carrier Act Exemption, 29 U.S.C. § 213(b)(1), or Executive Exemption , 29 U.S.C. § 213(a)(1). Essentially, they claim that the character of Roop's work duties obviate any obligation to pay him overtime.

Counts II through IV are based on the premise that Roop worked for hourly compensation and that he worked certain hours for which he was never compensated. In Counts II and III Roop alleges that because Defendants did not pay him for certain hours he worked, Defendants violated federal and Florida minimum wage laws for those particular, unpaid hours. Defendants, however, assert that these claims must fail because Roop's pay averaged to more than the minimum wage for any given workweek. In Count IV, Roop contends that Wrecker breached an oral contract by failing to pay him on an hourly basis. Defendants contend that there was no such contract, or that if there was, it was repudiated by Barreiros.

Finally, Defendants argue that Count V, for unjust enrichment, cannot stand because Roop was paid for his work and therefore cannot show inequity, which is an element of the claim.

Each of Defendants' arguments for summary judgment is addressed below.

#### A. Overtime Pay: Motor Carrier Act and Executive Exemptions

Roop claims that, under the FLSA he is entitled to time-and-a-half pay for time worked in excess of 40 hours per week. In the Motion, Defendants assert Roop's claim for unpaid overtime

must fail because of either the Motor Carrier Act ("MCA") exemption or the executive employee exemption to FLSA mandated overtime.

### 1. Motor Carrier Act Exemption

The FLSA "specifically exempts from [overtime pay] 'any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of' the MCA" (the exemption is the "MCA Exemption") *Walters v. Am. Coach Lines Of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009) (quoting 29 U.S.C. § 213(b)(1)). FSLA exemptions, including the MCA Exemption, are construed narrowly against the employer. *Id.* For the MCA Exemption to apply to Roop, two elements must be met: (1) "his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA" and (2) his "business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Id.* at 1227 (internal quotation omitted).

Defendants' Motion asserts that Wrecker falls within the Secretary of Transportation's jurisdiction and that Roop's business-related activities affect safety within the meaning of the second element of the MCA Exemption. Because the Court can decide this issue based on the second element, whether Roop's business activities affected safety, the Court limits its discussion to that matter.

Defendants point out various factual assertions relating to Roop's duties in an attempt to show that his work affected safety. Defendants assert Roop's duties included ensuring that drivers received assistance with safety-related concerns, that drivers received proper rest, that the trucks

did not exceed maximum safe weight, and that drivers' safety-related issues were properly handled. (Doc. 16 at 12).

Roop's affidavit in response raises issues about the degree to which his work duties affected safety. (Doc. 18 at 3 and accompanying citations to Doc. 18-1). För example, Roop claims that he received billing paperwork at the completion of a trip by an over the road ("OTR") driver, but other individuals were responsible for safety violations, maintenance, Department of Transportation citations and traffic citations. (*Id.*) Further, Roop notes other Wrecker employees determined whether OTR drivers were nearing on-duty hour limits and Roop merely communicated that to the drivers. (*Id.* at 3-4 and accompanying citations to Doc. 18-1). Roop also asserts he could only approve costs of $5.00 to $10.00 for a truck to be weighed and the drivers were responsible for ensuring that trucks did not exceed weight limits. (*Id.* at 4-5 and accompanying citations to Doc. 18-1).

Roop was a dispatcher, and the MCA Exemption does not apply to the types of duties a typical dispatcher would undertake. *See Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1007-08 (N.D. Cal. 2010) ("Generally, dispatching is not considered work that affects the safety of motor vehicle operation."); *cf.* 29 C.F.R. § 782.6(c)(1) ("Activities which do not directly affect such safety of operation include those performed by employees whose jobs are confined to such work as that of dispatchers . . . ."). While his title is not determinative of whether the MCA Exemption applies, Roop's duties are—Roop claims that his duties were consistent with those generally undertaken by a dispatcher. (*See* Doc. 18 at 5; Doc. 18-1 ¶ 10 (Roop asserting "My primary duty was dispatching tow trucks.")).

Roop did appear to take on duties other than a typical dispatcher, however what those duties were and the extent to which they affected safety at Wrecker is disputed. Therefore, there is

a material dispute of fact as to whether Roop's business-related activities directly affected the safety of the OTR activities of Wrecker within the meaning of the MCA Exemption. As such, summary judgment is not appropriate on Roop's overtime claim under the MCA Exemption.

### 2. Executive Exemption

Defendants also argue that Roop is exempt from FLSA's overtime requirements based on his status as an executive. Specifically, the FLSA exempts overtime pay for executive employees whose employment meets the following elements:

> (a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.[1]

Under the applicable regulations:

> [A]n employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. **Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.** Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the

---

[1] The exemption itself is found in 29 U.S.C. § 213(a)(1). The elements of what constitutes executive employees are set out in the above quoted regulations.

- 6 -

wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700 (emphasis added). As with the issue of the MCA Exemption, there is dispute between the parties about the nature of Roop's work.

Defendants contend that Roop was the "Ops Manager of the OTR division of Wrecker," that he exercised substantial managerial duties, trained and supervised drivers, and only reported to Barreiros, but otherwise co-managed the business. (*See* Doc. 16 at 14-16 and accompanying citations).

While Roop acknowledges some duties related to the OTR part of Wrecker's business, he states that his primary duty and what occupied most of his time was dispatching tow trucks. (*See* Doc. 18-1 ¶ 10). Further, Roop asserts that it was Barreiros that was primarily responsible for OTR business. (*See id.* ¶¶ 4-6).

Similar to the claimed exemption under the MCA, the disputed facts about the character of Roop's duties as a whole preclude summary judgment on this issue.

### B. Minimum Wage Claims

Roop advocates that this Court adopt a position whereby the Defendants would violate minimum wage laws if Roop was not compensated at a minimum wage for *each* hour worked, rather than on average for a given workweek. (*See* Doc. 18 at 10-11 citing *Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17 (D. Mass. 2011)). Under this theory, if Roop worked for certain hours for which he was entirely uncompensated, then Wrecker failed to pay him minimum wage for those hours. Defendants, contend that the appropriate approach is to analyze whether Roop's pay for a given *workweek* averages to more than minimum wage.

The Court declines to adopt the hour-by-hour minimum wage analysis in *Norceide*. *See Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985) ("[C]ourts have agreed that the workweek

[averaging] standard generally represents an entirely reasonable reading of the [minimum wage] statute"); *see also Walters v. Am. Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1300 (S.D. Fla. 2008) aff'd, 575 F.3d 1221 (11th Cir. 2009) ("The effective hourly rate for determining minimum wage violations is calculated by dividing the amount of compensation paid during a workweek by the total number of hours the employee worked during that workweek."); *Sandoz v. Cingular Wireless, LLC*, CIV.A. 07-1308, 2013 WL 1290204 (W.D. La. Mar. 27, 2013) (addressing issue of averaging pay for minimum wage analysis on workweek or pay-period and stating "the great weight of authority supports the view that minimum wage compliance is determined on a workweek-by-workweek basis"). Further, Roop has provided no authority demonstrating that under Section 448.110, Florida Statutes, the Court must evaluate whether Roop was paid a minimum wage for each hour worked individually rather than on average. The cited Florida statute requires a minimum wage be paid for *all* hours worked in Florida, not *each* hour.[2]

Accordingly, because Counts II and III are predicated on particular *hours* for which Roop was allegedly not paid, they must be dismissed.

### C. Unpaid Work

Finally, Roop claims that from approximately February 1, 2012 to May 7, 2012 he was paid for 35.5 hours of work some weeks, but worked in excess of 40 hours which were unpaid. Roop's final two claims assert that Defendant's failure to pay him constitute a breach of an oral contract for hourly wages, or, in the alternative, that if there is no contract, that that unpaid work constitutes unjust enrichment.

---

[2] Merriam-Webster defines "all" in pertinent part as "the whole, entire, total amount, quantity, or extent of[,] every member or part of while[, or] the whole number or sum of" while "each" is defined as "every one of two or more . . . things considered separately" Merriam–Webster Online Dictionary, http://www.m-w.com/dictionary (last visited Oct. 29, 2013).

**1. Breach of Contract**

These two counts turn on the nature of Roop's employment agreement with Defendants from February to May 2012. It is clear that at all times relevant to this case Roop and the Defendants agreed that Roop would provide labor and services in exchange for compensation. Defendants state that at some point in Roop's employment he began to work more than 40 hours per week but did not receive a corresponding pay raise. (Doc. 16 at 3). Thus, if there is a factually supported dispute about whether Roop had a contract for hourly compensation versus salary in 2012, then he has a triable claim for breach of contract. *See St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) ("Generally, where the parties acknowledge creation of a contract and the disagreement concerns their varying understandings about certain terms, such questions are properly submitted to a jury.").[3]

The Defendants assert that Roop's claim for breach cannot survive summary judgment because Roop has provided no evidence that there was a valid contract for hourly compensation. (Doc. 16 at 19-20). However, during Roop's deposition he testified that his initial agreement with Wrecker was for hourly compensation. (*See* Doc. 16-2 at 135:4-136:21 (Roop testifying that Barreiros agreed to compensate him on an hourly basis)). In October of 2011 Defendants ended Roop's half-day duties on Saturdays which led to a corresponding drop in pay. (Doc. 18 at 12 and accompanying citations (arguably indicating that Roop's pay was tied to the hours he worked as of late 2011)). Finally, Roop points out multiple times where variations in his pay-period hours

---

[3] In the Motion and Reply, Defendant's position regarding the existence of a contract shifts between denying a contract for hourly compensation and denying a contract outright. (*Compare* Doc. 16 at 19 (denying a contract for hourly compensation) *with* Doc. 20 at 9 ("Defendants argue that no discernible contract existed between Roop and Wrecker . . . .")). Defendant's attempt to deny any contract between Roop and Wrecker during 2012 is plainly untenable—Roop had an employment agreement with Wrecker during that timeframe and Wrecker paid Roop for at least some of his work. (*See* Doc. 16 at 7 (Defendant's statement of undisputed facts noting Roop's employment into 2012)).

corresponded to variations in his gross pay. Specifically, he cites to the period between September 21, 2011 and May 1, 2012[4] in which his hours fluctuated between 68.5 and 80 hours worked per pay period. (*See* Docs. 18 at 6-7; 18-4 at 20-64). Roop's gross pay during each pay period is equivalent to the number of hours worked multiplied by $16.875.[5] The above evidence supports the view that Roop's pay in 2012 was determined on the number of hours he worked rather than a base salary.

Defendants argue that even if the initial agreement between Roop and Defendants was for hourly compensation, Defendants repudiated the compensation element of the contract in 2009 when Barreiros required Roop to work more than 40 hours without a corresponding increase in pay. (Doc. 16 at 20). Defendants, therefore claim Roop has waived his rights to compensation for the allegedly unpaid hours he worked. Defendants first cite to *Mobil Oil Exploration & Producing Southeast, Inc. v. United States*, 530 U.S. 604, 622 (2000) for the proposition that performing under a repudiated contract can constitute a waiver of a right to restitution. However *Mobil Oil Exploration* held the Plaintiff did not waive its right to restitution and the facts of that case do not inform whether Roop's continued work for Wrecker would constitute a waiver. *Id.* at 622-23. Notably, Roop did register complaints with Wrecker about not receiving additional pay for the

---

[4] The final period cited by Roop, May 2, 2012 – May 15, 2012 is omitted from this analysis as it constituted the last pay-period of Roop's employment with Wrecker and was only one week, therefore the values therein may be viewed as an outlier from his standard compensation plan.

[5] The arguments by the parties relating to the fluctuations in hours and pay were raised in relation to the Executive Exclusion to FLSA overtime. (*See* Docs. 18 at 6-10; 20 at 3-5). The Court was able to rule on the Executive Exclusion without reliance on the issue of deductions to Roop's gross pay. However, the records submitted by the parties may be fairly viewed as evidence that Roop's compensation was in the form of hourly wages rather than a salary basis. Further, Roop again mentions the pay fluctuations during this timeframe, but in less detail, when responding in support of his breach of contract claim. (*See* Doc. 18 at 13).

time he put in. (Doc. 16-2 129:16-130:4 (noting that Roop complained to "Tony"[6] about not receiving pay for the additional hours he worked)). Defendants also cite *American General Life Ins. Co. v. Schoenthal Family*, LLC, 555 F.3d 1331, 1341-42 (11th Cir. 2009) for the proposition that if a party continues to perform under a repudiated contract, then that party waives the right to rescind the contract. However *Schoenthal* is inapposite—first, the issue here is not whether Roop waived his right to rescind a contract; second, the Eleventh Circuit was applying Georgia law; and third, the court found that there had been no waiver.

Plainly, Defendants agreed to pay Roop to work for Wrecker from February to May of 2012. The exact nature of this agreement is in dispute with some evidence supporting the view that the agreement was for hourly compensation, even after 2009 when Barreiros required Roop to work more than 40 hours without a pay raise. As such, the Motion must be denied as to the breach of contract claim. *See St. Joe Corp.*, 875 So. 2d at 381.

### 2. Unjust Enrichment

Plaintiff asserts a claim for unjust enrichment in the alternative to the breach of contract claim. (Doc. 2 ¶ 53). As discussed above, the employment agreement between Roop and Defendants was either for hourly compensation or it was not. If it was for hourly compensation, and Defendant prevails on the breach of contract claim, then the claim for unjust enrichment cannot stand. *Cf. Merle Wood & Associates Inc. v. Trinity Yachts, LLC*, 10-61997-CIV-HUCK, 2011 WL 845825, at *5 (S.D. Fla. Mar. 7, 2011) (noting double recovery on breach of contract and unjust enrichment is impermissible). Further, there is no dispute that Roop received some compensation for the time he worked during the February to May 2012 period. (*See* Doc. 18 at 7

---

[6] Subsequent deposition testimony indicates that "Tony" refers to Defendant Antonio Barreiros. (*See* Doc. 16-2 at 151:7 (Roop stating that he was employed by "Tony"); *Id.* at 134:1-136:25 (Roop describing his employment negotiations with Barreiros); *see also* Doc. 18-1 ¶ 4 (Roop's affidavit referring to Barreiros as "Tony Barreiros")).

(summarizing Roop's gross pay from Wrecker during 2012)). Thus, if Roop's compensation was not based on the number of hours he worked, then there is no evidence demonstrating inequity— he was offered and accepted a set amount for his work. *See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997) (the fourth element of unjust enrichment under Florida law is "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it"); *see also Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007) ("When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails."). Under either contingency Roop's claim for unjust enrichment must fail.

Therefore, it is

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART.** As to Counts II (FLSA Minimum Wage), III (Florida Minimum Wage), and V (Unjust Enrichment) these claims are dismissed. The Motion is **DENIED** as to Counts I (FLSA Overtime) and IV (Breach of Contract).

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 1, 2013.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party